UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-307-GWU

| | |
|---|---|
| ARLENE WALDROUP, | PLAINTIFF, |
| VS. | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | DEFENDANT. |

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

09-307  Arlene Waldroup

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Arlene Waldroup, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of being status post a claviculectomy in March, 2006, L5-S1 and L3-4 disc disease, lumbago, cervical spondylosis, radiculopathy with neuropathic pain, osteoarthritis, and bursitis.  (Tr. 21). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Waldroup retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 25-9).  The Appeals Council declined to review (Tr. 8-11), and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 47, high school education, and work experience as a care giver, housekeeper, and clerical worker could perform any jobs if she were limited to "sedentary" level exertion, and could do no work overhead with her left hand or arm. (Tr. 621-2).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 623).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Mrs. Waldroup alleged disability due to shoulder, back and neck problems, some of which stemmed from an injury in June, 2004. (Tr. 66, 607). She also described having a pinched nerve in the lower back, osteoarthritis in her hands, tendonitis in both elbows, and mild bursitis in the left knee. (Tr. 66).

There is an extensive amount of medical evidence in the court transcript, but unfortunately for the plaintiff, none of it supports her claim of total disability.

Mrs. Waldroup underwent extensive treatment for a left shoulder injury and cervical spine pain beginning in 2004, but Dr. William J. Lester, an orthopedist, diagnosed only mild inflammation of the AC joint of the left shoulder, a lumbar strain, myofascial pain, and gluteal piriformis inflammation, and released her to return to work with only a temporary limitation on overhead activity with the left arm. (Tr. 234, 236). Dr. William Brooks, a neurosurgeon, evaluated Mrs. Waldroup's lumbar spine problems and found nothing more than a muscular ligamentous strain. (Tr. 238). He recommended a continuation of epidural steroid injections and believed that "subsequent to that she would be able to return to gainful employment with minimal if any restrictions whatsoever." (Id.). Dr. Gregory Snider, a specialist in occupational medicine, did not provide anything more in terms of restrictions than temporary disability for three weeks. (Tr. 394). He declined to give an opinion for

Social Security Disability purposes.  (Tr. 392).  Another orthopedist, Dr. David Dome, kept the plaintiff off work for a period of time in 2004 and 2005, but by November, 2005 suggested that she return to work with no shoulder movement at or above shoulder height and no pushing, pulling, or lifting greater than five pounds. (Tr. 409).  However, by March, 2006, he asked her to return to work with no specific restrictions due to her shoulder and assessed only a ten percent upper extremity impairment following her partial claviculectomy. (Tr. 406).  State agency physicians who reviewed a portion of the record felt that the plaintiff would be able to perform "medium" level exertion.  (Tr. 248-9, 272-8).

On appeal, the plaintiff's most significant argument is that treating physicians' opinions not available to the ALJ established disabling restrictions.  First, the plaintiff submitted a physical capacity evaluation by a physician, whose name is illegible, dated November 16, 2007, to the Appeals Council on December 3, 2007.  The evaluation restricts the plaintiff from virtually all activity due to chronic pain and depression. Docket Entry 9-4, p. 3.  However, this record was submitted almost six months after the ALJ's June 19, 2007 decision.  This court's review is confined to evidence that was available to the ALJ, and it may consider newer evidence only if it is both new and material and the plaintiff shows good cause for failing to submit it earlier.  <u>Cline v. Commissioner of Social Security</u>, 96 F.3d 146, 148-9 (6th Cir. 1996).  In the present case, while the evidence is new, its materiality is dubious

9

since it does not specifically relate to the period prior to the ALJ's decision, and it is not clear that the physician had a treatment relationship with the plaintiff which would entitle his or her opinion to have great weight. The plaintiff has advanced no good cause for failing to obtain the evidence earlier. For these reasons, the new evidence does not provide a basis for remand.

The plaintiff also argues that a Physical Work Performance Evaluation (PWPE) performed by Bluegrass Physical Therapy at the request of Dr. Lauren K. Larson, a treating source, establishes that she is incapable of maintaining a sedentary work position. The PWPE was performed on May 21, 2007 and appears to show that the plaintiff was capable of performing sedentary level exertion. (Tr. 533-5). The physical therapist apparently concluded that Mrs. Waldroup was incapable of <u>sustaining</u> sedentary work for an eight-hour day or a 40-hour week, however, because of a decrease in her endurance with stair climbing and repetitive squatting, although the rationale is not entirely clear. (Tr. 534-5). A physical therapist is not an acceptable medical source under the Commissioner's regulations, however. 20 C.F.R. § 404.1513(d). Therefore, the ALJ was not required to give the opinion controlling weight. The plaintiff submits a copy of the PWPE containing an undated note from Dr. Larson stating that she agreed with the findings "above in summary form." Docket Entry 9-3, p. 2. Assuming that Dr. Larson was agreeing with the physical therapist's conclusion that the plaintiff would

not be able to sustain work for 40 hours a week, her notation was, for whatever reason, not in the copy available to the ALJ, and no good reason has been advanced for the deficiency.  Moreover, the ALJ could reasonably have relied on the opinion of Dr. Dome, who was also a treating source.  Consequently, none of the new evidence provides a basis for remand.[1]

The plaintiff also argues that the ALJ failed to consider the combined effect of all of her impairments, but a review of the administrative decision shows that the ALJ's discussion was adequate in this regard.  (Tr. 25-7).

The decision will be affirmed.

This the 18th day of June, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

---

[1] It is not clear why an inability to perform repetitive squatting and stair climbing would necessarily rule out sedentary work, which is defined in Social Security Ruling (SSR) 83-10 as being performed primarily in a seated position with occasional walking and standing.  SSR 83-10, p. 5.